IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| STEPHANE PARROTT, *et al.* <br><br> Plaintiffs <br><br> v. <br><br> MARRIOTT INTERNATIONAL, INC. <br><br> Defendant | Case No. 17-10359 <br><br> Hon. Victoria A. Roberts <br> Hon. R. Steven Whalen |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs Stephane Parrott and Kevin Williams, on behalf of themselves and a proposed collective of Food and Beverage Managers ("Food Managers") (collectively, "Plaintiffs"), have brought unpaid overtime claims against Defendant Marriott International, Inc. ("Marriott"), alleging that Food Managers were misclassified as exempt from overtime under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (the "FLSA"). *See* Amended Collective Action Complaint (Doc. 13) ("Amended Complaint"), ¶¶1-2, 18-19, 43-53.

Marriott has moved to dismiss Plaintiffs' claims on the grounds that the company was not an "employer" under the FLSA because Marriott is a franchisor and some Plaintiffs worked at hotels owned by franchisees. *See* Defendant's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 15) ("Defendant's Motion); *see also* Defendant's Brief in Support of Defendant's Motion (Doc. 15) ("Defendant's Brief"), pp. 8-15.

Defendant's Motion should be denied: Plaintiffs have sufficiently pled that Marriott is a "joint employer" under the FLSA and therefore may be held liable for the misclassification claims at issue in this case.

A memorandum in opposition to Defendant's Motion follows.

# INTRODUCTION

The Courtyard by Marriott hotels in which Plaintiffs work are franchised by various companies, but operated according to extensive, detailed, and mandatory policies, procedures, and operations manuals through which Marriott exerts pervasive, substantial, and exclusive operational control over the Plaintiffs' working conditions. *See* Amended Complaint at ¶¶23-33. While the various franchises may perform certain human resources functions (*e.g.,* signing paychecks, keeping personnel files, making weekly schedules), it is Marriott that controls and manages the operations of the hotels such that, as a matter of economic reality, it is a "joint employer" of Food Managers under the FLSA. *Id.* at ¶25; *see Solis v. Laurelbrook Sanitarium & Sch., Inc.,* 642 F.3d 518, 522 (6th Cir. 2011) ("[I]t is the 'economic reality' of the relationship between parties that determines whether their relationship is one of employment or something else.").

Moreover, it is the manner in which Marriott operates the hotels that is responsible for the misclassification of the Plaintiffs as exempt from the FLSA's overtime requirements: Marriott's operational controls eviscerate any opportunity for a Food Manager to truly *manage* a hotel café. *See* Amended Complaint at ¶¶3, 22; *see also, e.g., Schneider v. Cornerstone Pints, Inc.,* 148 F. Supp. 3d 690, 698 (N.D. Ill. 2015) (to determine joint-employment under the FLSA, courts should consider whether the defendant exercised control over the employee "in a manner that caused the FLSA violation (at least in part).").  Marriott's operational controls deprive Food Managers of any real managerial authority, leaving them with primary duties that are non-exempt: unloading trucks, stocking supplies, cooking, brewing coffee, bussing tables, preparing banquet rooms, cleaning, and other unskilled restaurant duties. *Id.* at ¶21.

Marriott asks this Court to ignore economic reality and instead artificially limit its analysis of the joint-employer question to four narrow human resources factors: (i) hiring and firing; (ii) setting work schedules; (iii) determining rate and method of pay; and (iv) keeping employment records. *See* Defendant's Brief at 8. Marriott cites only one case for its blinkered view of the joint-employer question, *Dowd v. DirecTV, LLC,* a case which *denied* a motion to

1

dismiss a joint-employer defendant, and did *not* limit its analysis to the four human resources factors. 2016 U.S. Dist. LEXIS 36, at *5-11, 31 (E.D. Mich. Jan 4, 2016).

Just as the cases upon which Marriott relies recognize that the four factors are not (as Marriott presents it) exclusive factors, Marriott's invitation to reduce economic reality to those four formalistic factors is misguided and must be rejected. "The issue of the employment relationship does not lend itself to a precise test, but is to be determined on a case-by-case basis upon the circumstances of the whole business activity." *Solis,* 624 F.3d at 522, *quoting Donovan v. Brandel,* 736 F.2d 1114, 1116 (6th Cir. 1984) (citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947)). Indeed, the Seventh Circuit went so far as to call it "***foolhardy*** to suggest that [the four-factors Marriott proposes] are the *only* relevant factors, or even the most important." *Moldenhauer v. Tazewell Pekin Consol. Communs. Ctr.,* 536 F.3d 640, 644 (7th Cir. 2008) (first emphasis added).

Courts across the country have developed flexible approaches to evaluating whether a defendant was a joint employer. *See, e.g., inter alia, Torres-Lopez v. May,* 111 F.3d 633, 640 (9th Cir. 1997) (considering over a dozen factors to find that farmworkers were jointly-employed by a grower who established the harvest schedule, closely monitored the picking of the plants, and provided most of the harvesting equipment); *Zheng v. Liberty Apparel Co. Inc.,* 355 F.3d 61, 72 (2d Cir. 2003) (remanding case to consider "functional control" factors such as whether the direct employer had a business that shifted as a unit from one putative joint employer to another, and whether the employees' work was integral to the putative joint employer's business).

In *Olvera v. Bareburger Grp. LLC,* 73 F. Supp. 3d 201, 207 (S.D.N.Y. 2014), a district court denied a franchisor's motion to dismiss because there were sufficient indicia of control pled in the complaint—*e.g.,* guiding franchises on how to hire and train employees, setting and enforcing requirements for franchise operations, retaining the right to inspect the franchise facilities—to adequately allege joint employment. And in *Ocampo v. 455 Hospitality LLC,* 2016 U.S. Dist. LEXIS 125928, at *19-21 (S.D.N.Y. Sept. 15, 2016), a district court recently considered a joint-employer allegation in the hotel franchise context, denying a motion to

2

dismiss because, among other things, the franchisor imposed mandatory training programs for franchise employees, established standards and controls for construction, furnishing, operation, appearance, and service of the hotel, and used a particular software system to track the hotel's revenue and operations.

Perhaps cognizant that its unrealistic and unprecedented test had been oft-rejected by other courts, Marriott spends the balance of its Brief (pp. 15-17) characterizing its operational controls as something called "brand standards," which it editorializes as being "the hallmarks of every franchise system." None of these notions is set forth in the Amended Complaint, and, at a minimum, are therefore inappropriate for consideration at the motion-to-dismiss stage. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (at this stage, courts must consider only the allegations of the complaint, which must accepted as true).

Even if it could be considered, Marriott's discussion of "brand standards" appears to be in support of its remarkable and untenable assertion—without any citation to authority—that a "traditional franchise relationship [is], as a matter of law, [ ] insufficient to make a franchisor the 'joint employer' of the Plaintiffs." *See* Defendant's Brief at 7. No court has ever so held, and certainly not *as a matter of law*, that a "traditional franchise relationship" (whatever that is) is incompatible with a joint-employer finding. Rather, the Sixth Circuit has clearly stated that "[w]hether an employment relationship exists under a given set of circumstances 'is not fixed by labels that parties may attach to their relationship nor by common law categories nor by classifications under other statutes.'" *Solis,* 642 F.3d at 522, *quoting Powell v. U.S. Cartridge Co.,* 339 U.S. 497, 528 (1950). The Court of Appeals rejected the use of any "categorical" test as "antithetical to settled jurisprudence calling for the consideration of the totality of the circumstances of each case." *Id.* at 524. Marriott's attempts to categorically immunize from FLSA liability all franchisers, everywhere, regardless of circumstances, must be rejected.

Defendant's Motion is a misguided attempt to limit this Court's inquiry into the economic reality of Plaintiffs' working conditions and to ignore the operational control Marriott

3

exerts over Food Managers, which is what causes them to be misclassified as exempt under the FLSA.  As such, the Motion must be denied.

# ARGUMENT

I.      **Legal Standard Applicable to Defendant's Motion**

Where a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its fact,'" a defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be denied.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id., citing Twombly* at 556.

Marriott was unable to cite a single case that dismissed a joint-employer claim like this one under Rule 12(b)(6).  Remarkably, the cases Marriott did cite all demonstrate how inappropriate dismissal of a joint-employer case is at the pleadings stage: *EEOC v. Skanska USA Bldg., Inc.,* 550 Fed. Appx. 253 (6th Cir. 2013) (***reversing summary judgment*** and remanding for trial against the putative joint-employer); *Dowd,* 2016 U.S. Dist. LEXIS 36 (***denying motion to dismiss***); *Bacon v. Subway Sandwiches & Salads LLC,* 2015 U.S. Dist. LEXIS 19572 (E.D. Tenn. Feb. 19, 2015) (***denying motion to dismiss*** and conditionally-certifying collective); *Politron v. Worldwide Domestic Servs., LLC,* 2011 U.S. Dist. LEXIS 52999 (M.D. Tenn. May 17, 2011) (outsourcing-vendor case; not a franchising case); *Singh v. 7-Eleven, Inc.,* 2007 U.S. Dist. LEXIS 16677 (summary judgment decision; not motion to dismiss); *Crosby v. Cox Communs., Inc.,* 2017 U.S. Dist. LEXIS 65951 (E.D. La. May 1, 2017) (same); *Lovett v. SJAC Fulton IND I, LLC,* 2016 U.S. Dist. LEXIS 111659 (N.D. Ga. Aug. 22, 2016) (same); *Courtland v. GCEP-Surprise, LLC,* 2013 U.S. Dist. LEXIS 105780 (D. Ariz. July 29, 2013) (same); *Zhao v. Bebe Stores, Inc.,* 247 F. Supp. 2d 1154 (C.D. Cal. Feb. 27, 2003) (same).

**II.     The FLSA's Expansive Definition of "Employment"**

The FLSA's definition of "employment" is "the broadest definition that has ever been included in any one act." *U.S. v. Rosenwasser,* 323 U.S. 360, 363 n.3 (1945), *analyzing* 29 U.S.C. § 203(g) ("employ" means to "suffer or permit" to work); *accord Salinas v. Commercial Interiors, Inc.,* 848 F.3d 125, 137, 142 (4th Cir. 2017) (finding the formal four-factor test "does not square" with the broad definition of "employ" in the FLSA).

"The FLSA's definition of 'employee' is strikingly broad and stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Keller v. Miri Microsystems, LLC,* 781 F.3d 799, 804 (6th Cir. 2015); *accord Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992). And the construction and application of this broad definition must be liberally made in light of the FLSA's remedial and humanitarian purposes. *See Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 296 (1985). Thus, courts must look to the "economic reality of the relationship between the parties" to determine whether an employment or joint-employment relationship exists under the FLSA. *Solis,* 642 F.3d at 522.

**III.    "Economic Reality" Is the Touchstone of the Analysis**

The two cases most similar to this case are *Olvera* and *Ocampo,* which both denied a putative joint employer's motion to dismiss. In *Olvera,* the putative joint employer was a franchisor. To capture a sense of the economic reality of the franchise relationship in that case—and whether the plaintiff had alleged sufficient facts supporting an inference that the franchisor was a joint employer—the district court looked to the following factors:

(1)   franchisor guided franchisees on how to hire and train employees;
(2)   franchisor set and enforced requirements for the operation of the franchises;
(3)   franchisor monitored employee performance;
(4)   franchisor specified the methods and procedures used by employees to prepare customer orders;

5

  (5)  franchisor exercised control, directly or indirectly, over the work of employees;

  (6)  franchisor required franchises to use recordkeeping systems for tracking labor costs;

  (7)  franchisor exercised control over franchises' timekeeping practices;

  (8)  franchisor retained right to inspect facilities and audit financial records;

  (9)  franchisor retained right to terminate the franchise agreement.

73 F. Supp. 3d at 207.

  In *Ocampo,* the putative joint employer was a *hotel* franchisor. To evaluate the economic reality in those circumstances, the district court looked to the following factors:

  (1)  franchisor imposed mandatory training programs;

  (2)  franchisor maintained the right to inspect the hotel;

  (3)  franchisor imposed mandatory recordkeeping requirements;

  (4)  franchisor established standards and policies for construction, furnishing, operation, appearance, and service of the hotel;

  (5)  franchisor requires use of particular software to track revenue;

  (6)  franchisor retained right to make changes to manner in which the hotel was operated;

  (7)  franchisor regularly performed audits and inspections;

  (8)  franchisor maintained the right to terminate the franchise;

2016 U.S. Dist. LEXIS 125928 at *20-21.

  As set forth in the next section, and taking into account the factors considered by other courts deciding motions to dismiss putative joint employers in the franchise context (including the hotel franchise context), Plaintiffs here have adequately stated claims against Marriott such that its Motion must be denied.

**IV. Plaintiffs Have Sufficiently Alleged Joint Employment as a Matter of Economic Reality**

  Plaintiffs' Amended Complaint not only contains factual allegations in support of each of the factors mentioned in *Olvera* and *Ocampo,* but it also alleges that the operational control

6

exercised by Marriott over franchise working conditions is what led to the FLSA violation in this case: namely, that Food Managers were misclassified as exempt, given primary duties that were non-exempt, and were not paid overtime. *See Schneider,* 148 F. Supp. 3d at 698 (joint-employer analysis should focus on whether defendant's conduct led to the FLSA violation at issue).

- ***Guidance in Hiring.*** Marriott prescribed "standardized procedures for hiring Good Managers" and determined who were "suitable individuals" to work in a Courtyard franchise hotel. *See* Amended Complaint at ¶30(a), *citing* Franchise Agreement ¶9.3(A). Marriott also maintained a job posting for Food Managers, describing the position, and accepting applications. *Id.* If Marriott determined the applicant was appropriate for interview, it directed her to a franchise hotel. *Id.*

- ***Training.*** Marriott imposed "mandatory corporate training" on Food Managers. *Id.* at ¶30(h), *citing* Franchise Agreement ¶10.1(A). And Marriott retained the right to require Food Managers to attend specific Marriott training programs within 30 days after hiring. *Id.* When opening new "Bistros" at the vast majority of hotel locations, Marriott sent in a "training team" to conduct extensive and exclusive training of hotel employees. *Id.* at ¶33(d). And Marriott issued additional training to Food Managers through "videos, webinars, and other online resources through a Marriott portal." *Id.* at ¶33(g).

- ***Operational Standards.*** Marriott established "Standards" by which food and beverage services are required to be rendered in franchise hotels. *Id.* at ¶30(d). These standards were enforced by site visits, inspections, and audits for compliance by Marriott corporate personnel. *Id.* at ¶30(g). Indeed, Marriott has stated in SEC filing that it "manage[s]" its hotels, even those it does not own, and uses "various means" to address "hotels in our system that do not meet standards." *Id.* at ¶25.

- ***Monitor Employee Performance.*** In addition to auditing the operations (and therefore the carrying out of those operations by employees), Marriott "maintain[s] employment records ... regarding Food Managers who work at Courtyard franchise hotels." *Id.* at ¶30(f). The

7

corporate auditors also "exercise[ ] a substantial degree of supervision over the work of Food Managers." *Id.* at ¶31(h).

- ***Methods and Procedures for Service / Control of the Work.*** In addition to extensive training on how Food Managers and Bistro workers are to provide service to hotel customers, Marriott also determines the vendors, menus, materials, sales systems, and reservation systems used to deliver that service. *Id.* at ¶31(b)-(c). "Marriott controls and dictates almost all aspects of operations" in the hotel cafes. *Id.* at ¶33(b).

- ***Recordkeeping Systems.*** Marriott required franchise hotels to transmit specified sales reports, *id.* at ¶31(b), labor budgets, *id.* at ¶30(d), and yearly income and expense statements in a standardized format. *Id.* at ¶30(e), *citing* Franchise Agreement ¶15.2(A).

- ***Timekeeping Systems.*** Marriott imposed "very tight cost controls" on franchise hotels, paying particular attention to "controlling labor costs" by "scrutinizing labor budget ... in order to eliminate or reduce overtime work by hourly bar and restaurant unit employees." *Id.* at ¶¶25, 30(c)-(d).

- ***Inspections and Audits.*** Marriott retained a right to inspect franchise hotels—announced or unannounced—and exercised that right frequently. *Id.* at ¶30(c), (g).

- ***Standards for Hotel.*** Marriott determines the location of the franchise hotels and designs the hotels and cafes, including the décor, signage, equipment, and uniforms to be used therein. *Id.* at ¶¶31(a)-(b), 33(c), (e).

- ***Right to Terminate.*** Marriott retains the right to terminate a franchise. *Id.* at ¶¶26, 30(b).

Thus, the factual allegations in the Amended Complaint are sufficient to prevail on the joint-employer question. Indeed, the economic reality of Plaintiffs' employment is that it is Marriott which controls their working conditions: Marriott's revenue source is the fees franchises pay, and those fees are a function of profits, which are, in turn, largely a function of controlling labor costs. *Id.* at ¶24. One of the primary ways to drive down labor costs is to use Food Manager classified as exempt, but performing non-exempt work, to cover more than 40

8

hours of work each week, thereby eliminating or dramatically reducing overtime. *Id.* at ¶26. Thus, the tight costs controls Marriott admits it imposes on franchise hotels is responsible (at least in part) for the misclassification of the Plaintiffs as exempt and therefore the FLSA overtime violation at issue in this case.

Therefore, the Defendant's Motion must be denied.

**V.     Speculation about Franchising in General Is Irrelevant to this Case**

Defendant's Brief makes a number of assertions that are not in the Amended Complaint and are irrelevant to any issue in this case: namely, that "the franchise business model itself" is under "attack" by Plaintiffs' case (p. 2) (it is not); that the operational control Marriott exercised over franchises are "the hallmarks of every franchise system" (*id.*) (there is no evidence of this one way or the other, and any such evidence would be irrelevant to deciding this case); and that "ever franchisor could be forced to litigate FLSA cases related to every franchise employee" if Plaintiffs claims against Marriott are allowed to provide (p. 3) (no, only Marriott will need to defend this case, other franchisors will have different facts).

But Marriott's "gloomy prediction that application of the FLSA will have a devastating economic impact on [its business, or others' businesses] do not relieve them from complying with the Act's provisions. In any event, that argument is one for the Congress, not the courts." *Sec'y of Labor v. Lauritzen,* 835 F.2d 1529, 1538 (7th Cir. 1987) (suggesting defendant could either change the way it treats workers so as *not* to be an "employer" under the FLSA, or could come into compliance with the Act vis-à-vis those workers).

Thus, this Court should disregard Marriott's appeals to its self-serving, and utterly unknown and unproven, assertions about the "hallmarks of the industry" and instead evaluate *this* case on *its own* merits. Furthermore, this Court should ignore Marriott's inappropriate political arguments that it should be excused from the requirements of the FLSA for business reasons.

9

## CONCLUSION

The Defendant's Motion improperly limits its analysis to four formal human resources factors, which is an improper restriction on the broad definition of "employer" mandated by the FLSA. Courts have described this narrow approach as "foolhardy" and have consistently rejected it, favoring a more flexible analysis of the "economic realities" of the working environment and a wide variety of factors and other considerations.

Plaintiffs' Amended Complaint sets forth detailed and extensive allegations regarding Marriott's operational control of the Plaintiffs' working conditions, and that such control is what caused the FLSA overtime violations in this case: Marriott's mandatory policies, procedures, and work rules eliminated the Plaintiffs' opportunity to exercise meaningful managerial authority or discretion, such that their primary duties were not exempt, but were instead non-exempt food and beverage preparation, service, and cleaning activities.

At the motion-to-dismiss stage, these allegations must be taken as true. And such allegations are adequate in an initial complaint to survive dismissal under Rule 12(b)(6). Therefore, Defendant's Motion should be denied.

Dated: June 12, 2017

Respectfully submitted,

s/ Jesse L. Young
Jesse L. Young
**SOMMERS SCHWARTZ PC**
1 Towne Square, Suite 1700
Southfield, Michigan 48076
T. (248) 746-4027
F. (248) 936-2138
E. jyoung@sommerspc.com

Nicholas A. Migliaccio
Jason S. Rathod
**MIGLIACCIO & RATHOD LLP**
412 H Street NE, Suite 302
Washington, D.C. 20002
T. (202) 470-3520
E. nmigliaccio@classlawdc.com
    jrathod@classlawdc.com

Seth R. Lesser
Fran L. Rudich
Christopher Timmel
**KLAFTER, OLSEN & LESSER, LLP**
Two International Drive, Suite 350
Rye Brook, NY 10573
T. (914) 934-9200
F. (914) 934-9220
E. seth@klafterolsen.com
   fran@klafterolsen.com
   christopher.timmel@klafterolsen.com

Drew Legando
**LANDSKRONER GRIECO MERRIMAN LLC**
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-9000
F. (216) 522-9007
E. drew@lgmlegal.com

*Counsel for Plaintiffs and the Proposed FLSA Collective*

## CERTIFICATE OF SERVICE

A copy of this document was served by the Court's ECF system on counsel of record on June 12, 2017, pursuant to Fed. R. Civ. P. 5(b)(2).

s/ Jesse L. Young
Jesse L. Young